**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

KY DARQUAIL MARTIN,

Plaintiff,

v. Case No. 26-CV-347

JOHN DOE, JANE DOE,
CO CRUMP, LT FLAIRTY,
BRANDON MORRIS, ROBERT MILLER,
and VINCENT CAIRA,

Defendants.

---

**SCREENING ORDER**

---

Plaintiff Ky Darquail Martin, an inmate confined at Racine Correctional Institution ("RCI"), filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendants violated his constitutional rights. (ECF No. 1.) Martin paid the filing fee in full on March 3, 2026. On April 20, 2026, Martin filed an amended complaint. (ECF No. 5.) On May 18, 2026, the court screened the amended complaint, found that it failed to state a claim, and allowed Martin the opportunity to file a second amended complaint. (ECF No. 8.) This order screens Martin's second amended complaint. (ECF No. 9.) The court has jurisdiction to screen the second amended complaint in light of Martin's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge

jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

## SCREENING THE COMPLAINT

*Federal Screening Standard*

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*Martin's Allegations*

Martin names Defendants C.O. Crump, Lt. Flairty, Security Director Brandon Morris, Warden Robert Miller, Captain Vincent Caira, John Does, and Jane Does. (ECF No. 9 at 1.) On January 9, 2026, Crump performed a cell search and confiscated Martin's bottle of religious prayer oil. (*Id.* at 2.) Martin told Crump that it was religious property and used for worship and prayer. (*Id.*) Plaintiff also told Crump that the oil was properly obtained through institutional channels. (*Id.*) Days later, Flairty alleged that the prayer oil tested positive for "Spice-M," a synthetic cannabinoid and instructed Crump to write a conduct report and create an evidence tag. (*Id.*)

The defendants failed to follow the instructions for conducting a test on the prayer oil and the test results should therefore not have been used to punish Martin. (*Id.*) Morris denied Martin's request to have the oil sent to a third party for testing. (*Id.* at 3.) Martin received a major disciplinary disposition of 60 days in disciplinary

segregation because he was unable to prove his innocence. (*Id.*) Martin maintains that the defendants' actions punished him for practicing his religion. (*Id.* at 3.) Martin was unable to practice his religious routine for months as a result. (*Id.*) Martin also alleges that he suffered cruel and unusual conditions of confinement while in segregation. (*Id.* at 4.) Martin alleges unsanitary living conditions because he was not able to disinfect his cell more than once a week and that he was forced to eat in close proximity to a toilet that smelled of urine and feces in a filthy cell. (*Id.*) Additionally, Martin alleges that insects crawled all over the cell, destroyed his stored food, and made his living conditions unsafe and unsanitary. (*Id.*)

*Analysis*

First, Martin may proceed against defendants Crump, Flairty, and Morris for a First Amendment Free Exercise Clause claim. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Incarcerated persons "clearly retain protections afforded by the First Amendment," including a limited right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted); *Tarpley v. Allen County*, 312 F.3d 895, 898 (7th Cir. 2002). To proceed under the Free Exercise Clause, the plaintiff must show that prison officials "intentionally and substantially interfere[d] with [his] ability to practice his faith" and that the prison's restriction was not "reasonably related to a legitimate penological interest." *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Here, Martin alleges that these defendants prevented him from practicing his religion for several months by confiscating his prayer oil and punishing him for possessing the oil. Martin maintains that he received the oil through approved institutional channels and that staff incorrectly identified it as contraband without sufficient testing. At the early pleading stage, the court will allow Martin to proceed on a First Amendment free exercise claim against Crump, Flairty, and Morris.

Second, Martin can proceed on a Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim. RLUIPA "provides that a federally funded prison may not 'impose a substantial burden on the religious exercise' of an inmate unless it can prove that doing so is the least restrictive means of furthering [a] compelling governmental interest.'" *West v. Radtke*, 48 F.4th 836, 844 (7th Cir. 2022) (citing 42 U.S.C. § 2000cc-1(a)). An incarcerated person whose religious exercise has been burdened in violation of RLUIPA "may sue for injunctive or declaratory relief." *Id.* (citing *Charles v. Berhagen*, 348 F.3d 601, 606 (7th Cir. 2003)). But relief under RLUIPA is not available against individual public employees. The statute permits relief only against "governmental bodies that receive federal funds and accept the conditions attached by the statute." *See Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) (RLUIPA claims against individual prison employees in their official capacities are barred by sovereign immunity and claims against employees in their personal capacities are barred because "[RLUIPA] does not create a cause of action against state employees in their personal capacity.")

Here, Martin alleges that RCI has placed a substantial burden on practicing his religion and injunctive relief may be available to him. As such, the court will allow Martin to proceed on a RLUIPA claim. The court therefore considers the proper defendant for such a claim. On a claim for injunctive relief, the question is whether the defendant has any authority to grant the relief requested. *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011); *Williams v. Doyle*, 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007). For now, the Court will assume that RCI Warden Miller can grant Martin relief under RLUIPA. Martin may therefore proceed against Miller on a RLUIPA claim.

Third, Martin may also proceed on an Eighth Amendment conditions of confinement claim against Flairty and Caira. A prisoner's claim of unconstitutional conditions of confinement is analyzed under the Eighth Amendment's cruel and unusual punishment clause. *See Farmer v. Brennan*, 511 U.S. 832, 834 (1994). A prisoner is entitled to live in conditions that do not amount to "punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Detainees are entitled to be confined under humane conditions that provide for their "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones[.]" *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996).

To establish a constitutional violation with respect to an inmate's living conditions, he must be able to demonstrate both: (1) the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) the defendants acted with deliberate indifference with respect to

the conditions. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Life's necessities include shelter, heat, clothing, sanitation, and hygiene items." *Woods v. Schmeltz*, No. 14-CV-1336, 2014 WL 7005094, at *1 (C.D. Ill. Dec. 11, 2014) (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)); *see also Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013).

Here, Martin alleges unsanitary and unsafe living conditions in segregation. Specifically, Martin alleges an insect infestation in his bedding, living space, meals, and garbage bin. Martin also alleges unsanitary living conditions and only being able to clean his cell with urine-filled water. Martin additionally alleges that Flairty and Caira were aware of these conditions and failed to address them. It is unclear if Martin's living conditions indeed rose to the level of an unconstitutional deprivation; however, at the early pleading stage, the court will allow Martin to proceed against Flairty and Caira for an Eighth Amendment conditions of confinement claim.

Fourth, the court finds that Martin fails to state a due process claim based on allegations that the defendants did not permit him to seek independent re-testing of items that test positive for drugs. Due process demands that "the findings of a prison disciplinary board have the support of some evidence in the record." *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). It is not the role of the court to "assess the comparative weight of the evidence underlying the disciplinary board's decision." *Id.* The only question the Court must answer is "whether there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Id.* At least one circuit has explained that a single positive test amounts to "some evidence"

and therefore satisfies the requirements of due process. *Easter v. Saffle*, 51 F. App'x 286, 289 (10th Cir. 2002) (citing *Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993), for the proposition that "due process does not require prison officials to provide second urinalysis by impartial laboratory"). The court further observed that "[t]hough the risk of false positives has not been entirely eliminated, we agree ... that the use of the test results may be relied upon as sufficient evidence to warrant prison discipline ...." *Id.* (citations omitted). Other courts in this district have similarly found no due process violations in similar circumstances. *See Robinson v. Smith,* No. 25-C-779, 2025 WL 2438705, at *3 (E.D. Wis. Aug. 25, 2025) (finding that prisoner "fail[ed] to state a due process claim based on allegations that [defendant] did not permit him to seek independent re-testing at his own expense of the dryer sheet to confirm that the machine did not produce a false positive"); *Sheppard v. Crasper*, No. 24-CV-0955-BHL, 2024 WL 4199802, at *4 (E.D. Wis. Sept. 16, 2024) ("An officer cannot be liable for violating Sheppard's rights if she relied on test results."). As such, the court finds that Martin may not proceed on a due process claim because the defendants relied on some evidence to support the disciplinary decision, and courts do not micromanage prison drug testing.

Finally, the court will dismiss the John and Jane Doe defendants. The second amended complaint does not include any factual allegations as to what the John and Jane Doe defendants allegedly did to violate Martin's rights. The unidentified Doe defendants have obviously not been served nor had the opportunity to consent to magistrate jurisdiction. However, "[b]ecause [a] John Doe defendant is not actually a

party, the court does not need his consent to dismiss him from the lawsuit." *Macklin v. Serrano*, No. 19-CV-583, 2020 WL 6323079, at *1 n.2 (E.D. Wis. Oct. 28, 2020) (citing *Coleman v. Labor & Indus. Review Comm'n*, 860 F.3d 461 (7th Cir. 2017).

## CONCLUSION

**THEREFORE, IT IS ORDERED** that the John and Jane Doe defendants are **DISMISSED** from this action for the failure to state a claim against them.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Crump, Flairty, Morris, Miller, and Caira. It is **ORDERED** that, under the informal service agreement, those defendants shall file a responsive pleading to the complaint within 60 days.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

Office of the Clerk of Courts
517 E. Wisconsin Avenue, Room 362
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Martin is further advised that failure to make a timely submission may result in the dismissal of this case for failure to diligently pursue it. In addition, the parties must notify the Clerk of Court of any change of address. Martin is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. Martin's failure to keep the court advised of his whereabouts may result in the dismissal of this case without further notice.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 15th day of September, 2026.

**BY THE COURT:**

Stephen C. Dries

STEPHEN C. DRIES
United States Magistrate Judge